# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# BRUNSWICK DIVISION

JESUS BARRERA-AVILA,

    Plaintiff,

v.

HARRELL WATTS; RAYMOND E. HOLT; JOHN V. FLOURNOY; KEN HARRIS, and SAM KIRCHOFF,

    Defendants.

CIVIL ACTION NO.: 2:16-cv-141

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. (Doc. 14.) For the reasons set forth below, I **RECOMMEND** that the Court **GRANT** Defendants' Motion to Dismiss and **DISMISS** Plaintiff's Complaint. Specifically, the Court should **DISMISS WITH PREJUDICE** Plaintiff's claims for monetary damages against Defendants in their official capacities, his RFRA claims for monetary damages, and his FTCA claims in their entirety. I further **RECOMMEND** that the Court **DISMISS** Plaintiff's Bivens claims for monetary damages **WITHOUT PREJUDICE** and **DISMISS AS MOOT** Plaintiff's declaratory and injunctive relief claims. Additionally, the Court should **DENY** Plaintiff leave to appeal *in forma pauperis* and **DIRECT** the Clerk of Court to close this case.

## BACKGROUND

Plaintiff, who was previously incarcerated at the Federal Correctional Institute in Jesup, Georgia ("FCI Jesup"), submitted a Complaint in the above captioned action contesting certain conditions of his confinement. Plaintiff believes and practices the Santeria religion and alleges

that Defendants deprived him of the ability to practice his sincerely held religious beliefs. (Doc. 12.)

Specifically, Plaintiff claims that Defendant Kenneth Harris, the Supervisory Chaplain at FCI Jesup, created a policy eliminating the practice of the "Spiritual Mass" ceremony. (Id. at pp. 3–4.) This policy was carried out by Defendant Sam Kirchoff, the Chaplain at FCI Jesup. (Id.) Plaintiff maintains that prior to Defendant Harris' arrival at FCI Jesup in November of 2014, there was a "Standardized Spiritual Mass" for Santeria practitioners at the Prison. (Id. at p. 10.) This "Standardized Mass" for Santeria allowed, among other things, for each practitioner to receive a half-cut cigar "so that the practitioner could properly invoke [his] own spiritual protectors" and "cleanse [himself] with it." (Id.) This practice was implemented without any security or safety issues. (Id.) However, on or about November 17, 2014, Defendant Harris terminated the practice of providing each practitioner a cigar and instead only allowed two cigars for the ceremony. (Id. at p. 10.)

Plaintiff maintains that, due to the sharing of cigars, Santeria practitioners were exposed to health risks and could not properly perform the religious ceremony. As for the health risks, Plaintiff contends that he suffered from "throat pain; troubling [sic] swallowing; sinuses; Body Aches; Headaches; Fatigue; loss of weight; loss of sleep, as one of the practitioners was sick with the flu." (Id. at p. 12.) He describes his ailments as "serious inhibition of the ability of Plaintiff to eat, chew, lack of ability to masticate food without causing pain and suffering to the Plaintiff's throat; and the inability to engage in the normal life activities, including sleeping, physical exercise, loss of nutrition deficiencies from inability to eat and chew." (Id. at pp. 12–13.) At the time of his Amended Complaint, Plaintiff stated that he suffered these symptoms "for almost a month" and had not recovered. (Id. at p. 13.)

Plaintiff also contends that Defendants interfered with Santeria practitioners' worship in other ways. He alleges that, due to Santeria practitioners' use of food offerings during Spiritual Mass, Defendant Harris relocated Santeria worship services outdoors because food is not allowed in the chapel. (Id. at p. 11.) However, Defendant Harris allows Jewish worshipers to bring challa bread, matzo, and beverages into the chapel during religious services. (Id.) Plaintiff also alleges that prison staff failed to provide supplies to the Santerian practitioners and that Defendants unnecessarily burdened Santerian inmates' receipt of religious items. (Id.)

Plaintiff sued Defendants in their individual and official capacities and contended that they violated the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §2000bb, *et seq*., the Federal Tort Claims Act ("FTCA"), and the First, Eighth and Fourteenth Amendments to the United States Constitution. (Doc. 12.) He requested compensatory and punitive damages in the amount of $320.00 per day per Defendant. (Id. at pp. 14–15.) He also requests court costs and expenses, and "declaratory and injunctive relief" against each Defendant. (Id. at p. 14.)

Plaintiff originally filed this action the United States District Court for the District of Columbia. Defendants moved that court to either dismiss Plaintiff's case or transfer the case to this District. (Doc. 14.) Among other things, they contended that the District of Columbia court lacked jurisdiction over them, because they reside in this District and the events giving rise to Plaintiff's claims occurred in this District. (Doc. 14-1, pp. 16–22.) Defendants also argued that they were immune from suit in their official capacities, and Plaintiff failed to state a claim upon which relief can be granted against them in their individual capacities. Plaintiff filed a response to Defendants' Motion, (doc. 24), and Defendants filed a reply, (doc. 29.). In the interim, Plaintiff was transferred from FCI Jesup to Yazoo City Low Federal Correctional Institute. (Doc. 28.)

The District of Columbia court ultimately granted Defendants' request to transfer the case to this Court. (Doc. 30.) However, that court left pending Defendants' arguments for dismissal which this Court now addresses.

**STANDARD OF REVIEW**

When ruling on a Rule 12(b)(6) motion to dismiss, the Court must "accept[ ] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009). "A complaint must state a facially plausible claim for relief, and '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" does not suffice. Ashcroft, 556 U.S. at 678.

"The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal punctuation and citation omitted). While a court must accept all factual allegations in a complaint as true, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. Id.

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v.

Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys.") (emphasis omitted) (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003)). However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules. McNeil v. United States, 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

## DISCUSSION

### I. Dismissal of Official Capacity Claims for Monetary Damages

Plaintiff brings this action pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971) ("Bivens") and RFRA. "Bivens only applies to claims against federal officers in their individual capacities; it does not create a cause of action for federal officers sued in their official capacities." Sharma v. Drug Enf't Agency, 511 F. App'x 898, 901 (11th Cir. 2013) (citing Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 69–71 (2001)). Moreover, the Eleventh Circuit has held that Congress did not unequivocally waive the Government's sovereign immunity through RFRA. Davila v. Gladden, 777 F.3d 1198, 1210–11 (11th Cir. 2015). Therefore, RFRA does not authorize suits for money damages against federal officers in their official capacities. Id. Thus, the Court should **DISMISS WITH PREJUDICE** Plaintiff's Bivens and RFRA claims for money damages against Defendants in their official capacities.[1]

---

[1] As Defendants point out, Plaintiff appears to disavow any claims against Defendants in their individual capacities. (Doc. 24, p. 8, 33.) Because Plaintiff cannot recover monetary damages against Defendants in their official capacities, and he does not sue them in their individual capacities, he cannot recover monetary damages at all. However, the Court provides additional grounds for dismissal of his monetary damages claims in the following sections.

5

**II.     Dismissal of RFRA Claims for Monetary Damages**

"Congress enacted RFRA . . . in order to provide very broad protection for religious liberty."  Burwell v. Hobby Lobby Stores, Inc., ___U.S. ___, 134 S.Ct. 2751, 2760 (2014).  Under the statute, the "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability."  42 U.S.C. § 2000bb–1(a).  If the Government takes action that substantially burdens a person's exercise of religion, it must "demonstrate[ ] that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000bb–1(b); see also, Gonzalez v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418 (2006) (pursuant to RFRA, the federal government must demonstrate a compelling interest when substantially burdening the exercise of religion).

"RFRA requires the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened."  Id. at 430–31 (quoting 42 U.S.C. § 2000bb-1(b)).  The Supreme Court has observed that the test for whether a person's religious exercise is substantially burdened is not "whether the religious belief asserted in a RFRA case is reasonable."  Hobby Lobby, 573 U.S. at ——, 134 S.Ct. at 2778.  Instead, the Court must look to "whether the [government's rule] imposes a substantial burden on the ability of the objecting part[y] to conduct [himself] in accordance with [his] religious beliefs."  Id. (emphasis omitted); see also Yellowbear v. Lampert, 741 F.3d 48, 55 (10th Cir. 2014) (noting that a burden is substantial when it "prevents the plaintiff from participating in an activity motivated by a sincerely held religious belief").

According to Plaintiff, he has been denied the ability to participate in rituals that his Santeria belief not only motivates but requires. Thus, Plaintiff plausibly alleges that Defendants violated RFRA. However, those claims do not entitle him to monetary relief.

RFRA states that "[a] person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000bb–1(c). There is no binding precedent which addresses whether RFRA provides claims against individual defendants for monetary damages. See Davila v. Gladden, 777 F.3d at 1210 ("[W]e decline to address whether RFRA authorizes suits against officers in their individual capacities."). However, in a similar case, Chief Judge Lisa Godbey Wood of this Court addressed this issue, and determined that RFRA does not provide for such claims. See Davilla v. Nat'l Inmate Appeals Coordinator, No. CV212-005, 2012 WL 3780311, at *1–3 (S.D. Ga. Aug. 31, 2012). In that case, Chief Judge Wood, who is the presiding judge in this case, explained,

> As Defendants note, there is no binding precedent which addresses whether the RFRA bars claims against individual defendants for monetary damages. However, several courts have addressed this question and have determined that the RFRA does not allow for the recovery of monetary damages. Oklevueha Native American Church of Hawaii, Inc. v. Holder, 676 F.3d 829 (9th Cir. 2012) (the "appropriate relief" provision does not allow suits for monetary damages under the RFRA); Burke v. Lappin, 821 F. Supp. 2d 244 (D.C. 2011) (the RFRA did not waive the federal government's sovereign immunity for damages); Jean-Pierre v. Bureau of Prisons, No. 09–266, 2010 WL 3852338 (W.D. Pa. July 30, 2010) (the RFRA does not waive sovereign immunity for monetary damages); Bloch v. Thompson, No. 1:03-CV-1352, 2007 WL 60930 (E.D. Tex. Jan. 5, 2007) (the RFRA does not waive immunity for damages); and Gilmore-Bey v. Coughlin, 929 F. Supp. 146 (S.D.N.Y. 1996) (the RFRA did not abrogate Eleventh Amendment bar to actions for monetary damages); but see Agrawal v. Briley, No. 02C6807, 2006 WL 3523750 (N.D. Ill. Dec. 6, 2006) (the RFRA does not bar monetary damages).
>
> The Eleventh Circuit Court of Appeals has not determined whether the RFRA bars monetary damages claims against individual defendants. However, the United States Supreme Court determined in Sossamon v. Texas, ___ U.S. ___,

7

> 131 S. Ct. 1651, 1659–60 (Apr. 20, 2011), that the "appropriate relief" provision of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc–2(a), is not "the unequivocal expression" of consent for states to "waive their sovereign immunity to suits for damages." In Smith v. Allen, the Eleventh Circuit concluded that § 2000cc–2(a) "cannot be construed as creating a private cause of action against individual defendants for monetary damages." 502 F.3d 1255, 1275 (11th Cir. 2007), *abrogated on other grounds by* Sossoman. The "appropriate relief" section contained in the RFRA is identical to that contained in the RLUIPA. 42 U.S.C. §§ 2000bb–1(c) and 2000cc–2(a).
>
> The undersigned has no reason to believe that the Eleventh Circuit's reasoning in a case pertaining to the RFRA would be any different than that court's reasoning in Smith, which concerned the RLUIPA and which is a statute of very similar construct as the RFRA. Accordingly, the undersigned agrees with Defendants that Plaintiff's monetary damages claims under the RFRA against Defendants are barred. See Cardinal v. Metrish, 564 F.3d 794, 799–801 (6th Cir. 2009) (noting the RLUIPA's "appropriate relief" provision is not a clear and unequivocal waiver of sovereign immunity and monetary damages claims are barred), and (citing Webman, 441 F.3d 1022, with seeming approval, that the RFRA does not authorize monetary damages claims).

Id. at *2–3. Chief Judge Wood went on to hold that RFRA permitted the plaintiff to pursue claims for injunctive relief. Id.

Chief Judge Wood's holding regarding monetary damage claims under RFRA applies with equal force in the case at hand. Because RFRA does not provide for such relief, the Court should **DISMISS WITH PREJUDICE** all RFRA monetary damage claims against Defendants.

### III. Dismissal of FTCA Claims

The FTCA waives the federal government's sovereign immunity as to negligent or wrongful actions by its employees within the scope of their official duties, where a "private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). However, the Eleventh Circuit has made clear that "constitutional claims are not cognizable under the FTCA's jurisdictional provision, and the United States is not liable for damages under the FTCA for suits arising out of constitutional violations." Treece v. Wilson, 212 F. App'x 948, 951 (11th Cir. 2007) (citing FDIC v. Meyer,

8

510 U.S. 471, 478 (1994); Couden v. Duffy, 446 F.3d 483, 499 (3d Cir. 2005); and Williams v. United States, 242 F.3d 169, 175 (4th Cir. 2001)); see also Trupei v. United States, 239 F. App'x 489, 493–94 (11th Cir. 2007) (*pro se* prisoner's Eighth Amendment claim was not cognizable under the FTCA). Here, Plaintiff's Complaint and Amended Complaint only assert constitutional claims. Indeed, Plaintiff states in his Objections that his Complaint "is premised on Constitutional violations under the First Amendment and the Equal Protection Clause of the United States Constitution." (Doc. 14, p. 3.) These claims are not cognizable under the FTCA.

Furthermore, there are exceptions to the FTCA's waiver of sovereign immunity, and, of import in this case, is 28 U.S.C. § 2680(a), or the discretionary function exception. The FTCA does not apply to:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether . . . such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether . . . the discretion involved be abused.

28 U.S.C. § 2680(a). "If the discretionary function exception applies, the FTCA claim must be dismissed for lack of subject matter jurisdiction." Lambert v. United States, 198 F. App'x 835, 839 (11th Cir. 2006). A two-part test is used to determine whether the discretionary function exception applies, and thus, whether a cause of action against the United States is barred. First, "the nature of the conduct" is considered, and then it is determined "whether [the conduct] involves an element of judgment or choice." Cohen v. United States, 151 F.3d 1338, 1341 (11th Cir. 1998) (internal punctuation and citation omitted). "Government conduct does not involve an element of judgment or choice, and thus is not discretionary, if 'a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because the employee has no rightful option but to adhere to the directive.'" Id. (quoting Ochran v. United States, 117

F.3d 495, 499 (11th Cir. 1997)). Second, "if the conduct at issue involves the exercise of judgment, [a court] must determine whether that judgment is grounded in considerations of public policy." Id. "In making this determination, [courts] do not focus on the subjective intent of the government employee or inquire whether the employee actually weighed social, economic, and political policy considerations before acting." Id. Instead, courts "focus on the nature of the actions taken and on whether they are susceptible to policy analysis." Id.

In this case, Plaintiff takes issue with Defendants' judgment and choices on issues that are grounded in questions of public policy. Cf. Cohen, 151 F.3d at 1342 (even if the Bureau of Prisons ("BOP") has "a general duty of care to safeguard prisoners, the BOP retains sufficient discretion in the means it may use to fulfill that duty to trigger the discretionary function exception.") Accordingly, the discretionary function exception to the FTCA's waiver of sovereign immunity precludes this Court from exercising jurisdiction over Plaintiff's FTCA claims.

Plaintiff's FTCA claims are also barred by the exception to the FTCA's waiver of sovereign immunity found at 28 U.S.C. § 1346(b)(2), or the physical injury exception. That subsection provides as follows:

> No person convicted of a felony who is incarcerated while awaiting sentencing or while serving a sentence may bring a civil action against the United States or an agency, officer, or employee of the Government, for mental or emotional injuries suffered while in custody without a prior showing of physical injury.

28 U.S.C. § 1346(b)(2). This statutory language mirrors, in large part, the physical injury requirement of 42 U.S.C. § 1997e(e). Therefore, the Court's below analysis of Plaintiff's claims under Section 1997e(e) applies with equal effect in this context. See Doe v. United States, No. CIV. 12-00640 ACK, 2014 WL 7272853, at *6 (D. Haw. Dec. 17, 2014) ("Given the similar language between §§ 1346(b)(2) and 1997e(e), the Court will rely upon cases interpreting either

statute."); Michtavi v. United States, No. 4:07-CV-0628, 2009 WL 578535, at *5 n.2 (M.D. Pa. Mar. 4, 2009) (same). As explained below, even construing Plaintiff's Amended Complaint liberally, he fails to allege an adequate physical injury. Therefore, the physical injury exception provides yet another bar to Plaintiff's FTCA claims.

For all of these reasons, the Court should **DISMISS WITH PREJUDICE** Plaintiff's claims under the Federal Tort Claims Act.

## IV. Dismissal of Bivens Claims for Monetary Relief

In Bivens, the United States Supreme Court "recognized for the first time an implied private action for damages against federal officers" for violations of certain constitutional rights. Corr. Serv. Corp. v. Malesko, 534 U.S. 61, 66 (2001). Here, Plaintiff seeks to hold Defendants liable for violating his rights under the Free Exercise Clause of the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, and his right against cruel and unusual punishment under the Eighth Amendment. Regardless of whether Plaintiff has plausibly alleged that Defendants violated these rights, he cannot recover monetary damages.

"No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The purpose of this statute is "to reduce the number of frivolous cases filed by imprisoned plaintiffs, who have little to lose and excessive amounts of free time with which to pursue their complaints." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (citing Harris v. Garner, 216 F.3d 970, 976–79 (11th Cir. 2000)). "Tracking the language of [this] statute, § 1997e(e) applies only to lawsuits involving (1) Federal civil actions (2) brought by a prisoner (3) for mental or emotional injury (4) suffered while in custody." Id. at 532.

In Williams v. Brown, 347 F. App'x 429, 436 (11th Cir. 2009), the Eleventh Circuit stated that, "compensatory damages under § 1983 may be awarded only based on actual injuries caused by the defendant and cannot be presumed or based on the abstract value of the constitutional rights that the defendant violated. Pursuant to 42 U.S.C. § 1997e(e), in order to recover for mental or emotional injury suffered while in custody, a prisoner bringing a § 1983 action must demonstrate more than a de minim[i]s physical injury." Id. (internal citations omitted) (alterations in original). Consequently, a prisoner that has not suffered any physical injury cannot recover compensatory or punitive damages. Al-Amin v. Smith, 637 F.3d 1192, 1199 (11th Cir. 2011) ("In sum, our published precedents have affirmed district court dismissals of punitive damage claims under the PLRA because the plaintiffs failed to meet § 1997e(e)'s physical injury requirement."); Smith v. Allen, 502 F.3d 1255, 1271 (11th Cir. 2007) ("It is clear from our case law, however, that [compensatory and punitive damages] are precluded under the PLRA.") *abrogated on other grounds by* Sossamon v. Texas, 563 U.S. 277 (2011). However, the Eleventh Circuit has held that Courts should dismiss an inmate's punitive and compensatory damages claims under Section 1997e(e) without prejudice to allow an inmate to refile his claims when and if he is released. Harris v. Garner, 216 F. 3d 970, 980 (11th Cir. 2004).

In his Amended Complaint, Plaintiff attempts to dodge the operation of Section 1997e(e), by arguing that he has suffered from an unnamed sickness due to sharing cigars with his fellow inmates. "In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than *de minimis*." Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1312–13 (11th Cir. 2002). "The meaning of the phrase 'greater than *de minimis*,' however, is far from clear." Chatham v. Adcock, 334 F. App'x 281, 284 (11th Cir. 2009). Nonetheless, courts have

repeatedly held that illness of the type that Plaintiff alleges in his Amended Complaint does not clear the Section 1997e(e) hurdle.

Indeed, this Court has already found that an inmate cannot recover monetary damages on the same claimed injuries that Plaintiff raises here. Order, Rosales v. Watts, et. al., 2:15-cv-94 (S.D. Ga. March 15, 2016) ECF No. 22. In Rosales, one of Plaintiff's former fellow Santerian prisoners at FCI Jesup brought the same claims Plaintiff brings here. Rosales, like Plaintiff, contended that sharing a cigar had caused him to contract a sickness with the exact same symptoms that Plaintiff alleges in his Amended Complaint. Id. at 9–10. Chief Judge Wood found that, even accepting Rosales' claims of illness as true, Section 1997e(e) barred his claims for monetary relief. Id. at 10–12 (citing Jackson v. Hill, 569 F. App'x 697, 699 (11th Cir. 2014) (allegation that retaliation caused Plaintiff sleeplessness insufficient to state physical injury under Section 1997e(e)); Quinlan v. Personal Trans. Servs. Co., 329 F. App'x 246, 249 (11th Cir. 2009)(pretrial detainee's complaints of headaches, difficulty breathing, temporary chest pain, and lingering back pain were not greater than *de minimis* and, therefore, did not provide the necessary physical injury to recover for mental and emotional injuries); Adcock, 334 F. App'x at 281 (claims of nausea, nightmares, and increased blood pressure insufficient to satisfy Section 1997(e)); Johnson v. Runnels, No. 2:04-cv-776, 2013 WL 3940884 (E.D. Cal. July 30, 2013) (coughing, sneezing, severe headaches, body aches, and throat pain not more than *de minimis* injuries); Rainey v. Huertas, No. 12-cv-01434, 2013 WL 491925 (D. Col. Jan. 17, 2013) (weight loss due to inability to chew not an injury more than *de minimis*); Hall v. Plumber Official, No. 10-20814, 2011 WL 1979721, at \*14 (S.D. Fla. Apr. 26, 2011) (plaintiff's allegations of dehydration, severe diarrhea, gastroesophogeal reflux disease, chest pain, abdominal pain, bleeding gums, plaque buildup, depression, and constant, severe, and unnecessary pain did not

show an injury greater than *de minimis*); Sanchez v. United States, No. 10-21435, 2010 WL 3199878 (S.D. Fla. Aug. 6, 2010) (loss of appetite, loss of sleep, and gastrointestinal distress insufficient to state physical injury under Section 1997e(e)); Bryant v. Lafourche Parish Det. Ctr., No 09-7345, 2010 WL 1979789 (E.D. La. Apr. 23, 2010) (finding flu-like symptoms *de minimis* injuries and summarizing cases finding same); White v. Simpson, No. 3-04-cv-728, 2004 WL 2049306 (N.D. Tex. Sept. 13, 2004) (suffering flu-like symptoms insufficient to state more than *de minimis* physical injury); Carnell v. Multnomah Cty., 141 F. Supp. 2d 1046, 1053-54 (D. Or. 2001) (allegations of foot fungus, nose sores, constipation, and winter cold amounted only to *de minimis* injuries precluding relief for compensatory damages)).

For all of these reasons, even accepting the facts stated in Plaintiff's Complaint and Amended Complaint as true, he has failed to allege a physical injury that is more than *de minimis*. Therefore, he cannot recover compensatory or punitive damages on his Bivens claims.

For all of these reasons, the Court should **DISMISS WITHOUT PREJUDICE** Plaintiff's Bivens claims for monetary relief.

## V. Dismissal of Claims for Injunctive and Declaratory Relief

In his Complaint, in addition to monetary relief, Plaintiff requested that the Court issue injunctive and declaratory relief to prevent further interference with his Santerian practice at FCI Jesup. However, Plaintiff was subsequently transferred out of FCI Jesup to Yazoo City Low Federal Correctional Institute. (Doc. 28.) Thus, his claims for declaratory and injunctive relief are now moot.

"Article III of the Constitution limits the jurisdiction of the federal courts to the consideration of 'Cases' and 'Controversies.'" Mingkid v. U.S. Att'y Gen., 468 F.3d 763, 768 (11th Cir. 2006) (citation omitted). "The doctrine of mootness derives directly from the case-or-

controversy limitation, because an action that is moot cannot be characterized as an active case or controversy." Id. (citation omitted). A case is moot when it no longer presents a live controversy for which the court can provide meaningful relief. Id. An inmate's claim for injunctive relief against prison officials must be dismissed for mootness when the prisoner is transferred to another prison and is no longer subject to the condition for which injunctive relief is sought. Spears v. Thigpen, 846 F.2d 1327, 1328 (11th Cir. 1988); Wahl v. McIver, 773 F.2d 1169, 1173 (11th Cir. 1985); McKinnon v. Talladega Cty., Ala., 745 F.2d 1360, 1363 (11th Cir. 1984). Because Plaintiff is no longer housed at FCI Jesup, he is no longer subjected to the authority and practices of Defendants. Thus, any injunctive or declaratory relief the Court could issue would not provide Plaintiff any meaningful relief. Consequently, the Court should **DISMISS AS MOOT** Plaintiff's claims for declaratory and injunctive relief.[2]

## VI. Denial of Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.[3] Though Plaintiff has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. See Fed. R. App. R. 24(a)(1)(A) ("A party who was permitted to proceed *in forma pauperis* in the district-court action, . . ., may proceed on appeal *in forma pauperis* without further authorization, unless the district court—before or after the notice of appeal is filed—certifies that the appeal is not taken in good faith[.]"). An appeal cannot be taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is filed, that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3). Good faith in this

---

[2] Defendants filed their Motion prior to Plaintiff's transfer. Thus, they did not argue that his claims are moot. Nonetheless, the Court has "an obligation to notice and decide mootness issues" *sua sponte*. United States v. Sec'y, Florida Dep't of Corr., 778 F.3d 1223, 1227 (11th Cir. 2015)

[3] A Certificate of Appealability ("COA") is not required to file an appeal in a Section 1983 action. See Fed. R. App. P. 3 & 4; Morefield v. Smith, No. 607CV010, 2007 WL 1893677, at *1 (S.D. Ga. July 2, 2007) (citing Mathis v. Smith, No. 05-13123-A (11th Cir. Aug. 29, 2005) (unpublished)).

context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Defendants' Motion to Dismiss and Plaintiff's Response, there are no non-frivolous issues to raise on appeal, and any appeal would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

For the reasons set forth above, I **RECOMMEND** that the Court **GRANT** Defendants' Motion to Dismiss, (doc. 14), and **DISMISS WITH PREJUDICE** Plaintiff's claims for monetary damages against Defendants in their official capacities, his RFRA claims for monetary damages, and his FTCA claims in their entirety. I further **RECOMMEND** that the Court **DISMISS** Plaintiff's Bivens claims for monetary damages **WITHOUT PREJUDICE**. The Court should also **DISMISS AS MOOT** Plaintiff's declaratory and injunctive relief claims and **DENY** him leave to appeal *in forma pauperis*. As these rulings would dispose of all of Plaintiff's claims, the Court need not address the remaining portions of Defendants' Motion.

Any party seeking to object to this Report and Recommendation is **ORDERED** to file specific written objections within fourteen (14) days of the date on which this Report and

Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the Plaintiff.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 8th day of March, 2017.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA